IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| UNITED STATES OF AMERICA, | CR-09-84-GF-DLC-RKS |
|---|---|
| Plaintiff, | **FINDINGS AND RECOMMENDATION TO REVOKE DEFENDANT'S SUPERVISED RELEASE** |
| vs. | |
| ERICK THOMAS RED DOG, | |
| Defendant. | |

## I. Synopsis

Mr. Red Dog was accused of violating his conditions of supervised release by consuming methamphetamine, failing to notify his probation officer of contact with law enforcement, and consuming alcohol. Mr. Red Dog admitted to the second and third violations, and the government proved the first at a revocation hearing. Mr. Red Dog should be incarcerated for 12 months, with no supervised release to follow.

1

## II. Status

Mr. Red Dog pleaded guilty in 2009 to being a Felon in Possession of a Firearm. CD 26. He was sentenced to 33 months imprisonment, with two years supervised release to follow. CD 35. Mr. Red Dog had his supervised release revoked in July 2012 for consuming alcohol and failing to participate in substance abuse treatment. CD 57. He was committed to prison for 11 months, with 13 months supervised release to follow. CD 57. Mr. Red Dog began his current term of supervised release on June 17, 2013. CD 59.

Mr. Red Dog had an earlier felony conviction: Assault with a Dangerous Weapon, in 2002. CD 59. His sentence for that offense included supervised release, which was revoked twice for failure to comply with conditions. CD 59.

**Petition**

The United States Probation Office filed a petition on July 31, 2013, asking the court to revoke Mr. Red Dog's supervised release. CD 59. The petition alleged that Mr. Red Dog violated three conditions of his supervised release. It alleged he 1) violated Standard Condition #7 by consuming methamphetamine, for which he tested positive on June 24, 2013; 2) violated Standard Condition #11 by failing to notify his probation officer within 72 hours that he was questioned by law enforcement twice on July 20, 2013; and 3) violated Special Condition #3 by

2

consuming alcohol on July 20, when a breath test measured his blood alcohol concentration at .319.  CD 59.  Based on the petition, the undersigned issued a warrant for Mr. Red Dog's arrest.  CD 60.

**Initial appearance**

Mr. Red Dog was arrested on August 4, 2013.  He made an initial appearance before the undersigned on August 8.  He was accompanied by Federal Defender David Ness, who was appointed to represent Mr. Red Dog.  Assistant United States Attorney Ryan Weldon represented the United States.   Mr. Red Dog said he had read and understood the petition.  Mr. Weldon stated that Mr. Red Dog could be imprisoned for up to 24 months if his supervised release is revoked.  Mr. Ness agreed.  Mr. Red Dog waived his right to a preliminary hearing, and said he would like to proceed immediately to a revocation hearing.

The undersigned described the Findings and Recommendations procedure, explaining that the undersigned would recommend a disposition to United States District Judge Dana L. Christensen.  Judge Christensen will decide whether to revoke Mr. Red Dog's supervised release and, if so, what sanction to impose.  Mr. Red Dog was informed of his right to object to the recommendation, and to request another hearing from Judge Christensen.  The revocation hearing commenced.  CD 62.

**Revocation hearing**

Mr. Ness said that Mr. Red Dog was prepared to admit Violations 2 and 3, but disputed Violation 1, regarding methamphetamine consumption. Mr. Ness said that Mr. Red Dog acknowledges testing positive for methamphetamine, but maintains that he consumed it unintentionally when he smoked a cigarette that, unbeknownst to him, was laced with the drug. Mr. Red Dog's probation officer was unavailable to testify. Because the alleged violation is significant and likely to have an impact on the disposition, the undersigned continued the hearing a week so the probation officer could testify.

The parties reconvened on August 20, 2013. Mr. Red Dog was present with Mr. Ness; Mr. Weldon represented the United States. Mr. Red Dog maintained his position that his methamphetamine consumption was involuntary.

Mr. Red Dog's probation officer, Michael Eliason, testified by telephone without objection from the Defendant. Mr. Eliason said that he had an initial meeting with Mr. Red Dog shortly after Mr. Red Dog began his current term of supervised release. Mr. Red Dog submitted a urine sample that tested positive for methamphetamine. Mr. Eliason testified that Mr. Red Dog initially denied using methamphetamine, but then admitted smoking "two hits" with an acquaintance.

Mr. Red Dog signed an admission form at the meeting, in which he wrote that he "smoked meth." The admission form was admitted into evidence. Mr. Eliason testified at the hearing that he did not recall Mr. Red Dog claiming the methamphetamine use was unintentional. Mr. Eliason acknowledged that Mr. Red Dog does not have a history of methamphetamine use.

The undersigned finds that Mr. Red Dog's admissions adequately establish Violations 2 and 3. The undersigned finds the United States proved Violation 1 by a preponderance of the evidence. Mr. Eliason was a credible witness, and Mr. Red Dog wrote on an admission form, without qualification, that he "smoked meth."

The violations justify revocation of Mr. Red Dog's supervised release. His violation Grade is C, his criminal history category is III, and the underlying offense is a Class C felony. He could be ordered to serve up to 24 months in prison. The United States Sentencing Guidelines call for 5 to 11 months imprisonment. Mr. Red Dog could also be ordered to spend up to 25 months on supervised release, less any custodial time imposed. Mr. Weldon and Mr. Ness agreed with those calculations.

Mr. Ness requested a sanction consisting of custodial time in the guideline range, with no supervised release to follow. Mr. Ness acknowledged that Mr. Red Dog has a poor record of supervised release compliance, but maintained that no

circumstances of these violations justify an upward departure. Mr. Ness said Mr. Red Dog intends to move away from the reservation to live somewhere with greater economic opportunity and fewer negative influences. He asked that no supervised release be imposed, so that Mr. Red Dog can relocate when he completes any custodial term that may be imposed.

Mr. Weldon requested a sanction of 15 to 24 months imprisonment. He argued that the upward departure is warranted by Mr. Red Dog's repeated offenses. Mr. Weldon expressed concern that Mr. Red Dog may have intentionally violate his supervised release, knowing it might cost him prison time but that additional supervised release probably would not be imposed. In fact, Mr. Weldon argued that additional supervised release should not be imposed since it is not productive in Mr. Red Dog's case.

Mr. Red Dog addressed the court. He said he has a problem with alcohol that has caused him to make mistakes. He assured the court that he did not intentionally violated his conditions in the hopes of ending supervised release – he is trying to move on with his life. Mr. Red Dog said he intends to move away from the reservation to pursue work and a healthier lifestyle.

### III. Analysis

Mr. Red Dog's supervised release should be revoked. He admitted to violating two conditions, which would be sufficient to revoke his supervised release. Additionally, the government proved another serious violation.

He should be committed to the Bureau of Prisons for 12 months, with no supervised release to follow. The upward departure is warranted in Mr. Red Dog's case. His repeated violations show a complete lack of respect for court orders. In this case the violations were significant, including methamphetamine consumption and extreme intoxication.

No additional supervised release should be imposed. Mr. Red Dog's refusal to comply with the conditions or cooperate with his probation officer make supervision ineffective in his case. It is an unproductive use of limited resources.

### IV. Conclusion

Mr. Red Dog was advised that revocation and the sanction described above would be recommended to Judge Christensen. He was reminded that Judge Christensen will decide whether to revoke his supervised release, and that he has a right to object to this recommendation within 14 days of its issuance.

The court FINDS:

1. Mr. Red Dog violated Standard Condition #7 by consuming methamphetamine on or around June 21, 2013. The United States proved the violation by a preponderance of the evidence.

2.	Mr. Red Dog violated Standard Condition #11 by failing to report to his probation officer within 72 hours that he was contacted and questioned by a law enforcement officer on July 20, 2013.

3.	Mr. Red Dog violated Special Condition #3 by entering a bar and consuming alcohol on July 20, 2013.

The court RECOMMENDS:

1.	The District Court should enter the attached Judgment, revoking Ms. Denny's supervised release and committing her to the custody of the United States Bureau of Prisons for 9 months.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may serve and file written objections to the Findings and Recommendations within 14 days of their entry, as indicated on the Notice of Electronic Filing. 28 U.S.C. § 636(b)(1). A district judge will make a de novo determination regarding any portion of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge, and may lose the chance to appear and allocute before a district judge.

Dated the 12th day of September, 2013.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge